UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELEPORT MOBILITY, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRZYSZTOF SYWULA,<br><br>Defendant. | Case No. 21-cv-00874-SI<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION, DENYING MOTION TO DISMISS, AND STAYING PROCEEDINGS PENDING ARBITRATION**<br><br>Re: Dkt. Nos. 35, 36 |

Before the Court are defendant's motions to compel arbitration and to dismiss. Dkt. Nos. 35, 36, 40. On June 4, 2021, the Court heard oral argument on defendant's motions. For the reasons stated below, the Court **GRANTS** defendant's motion to compel, **DENIES** defendant's motion to dismiss as **MOOT**, and **STAYS** litigation pending arbitration.

**BACKGROUND**

This case arises from defendant Krzysztof Sywula's alleged control and misappropriation of plaintiffs' computer software and equipment.

On August 22, 2016, defendant signed a Consulting Agreement with Alexis DaCosta and Vince Coletti. Dkt. No. 1, Complaint, ¶ 21-22. According to the Consulting Agreement, defendant agreed to develop technical software and assist DaCosta and Coletti with drafting patents relating to the developed software. *See* Dkt. No. 1-1 (Ex. 1). The Consulting Agreement did not contain an arbitration provision. *See id.*

On November 10, 2018, defendant, DaCosta, and Coletti signed an Xelerate Partnership Agreement ("XPA"). Dkt. No. 1 ¶¶ 23-26. The XPA created a partnership between defendant, Coletti, and DaCosta and designated defendant as the Managing Partner for Product Development

of the partnership. *See id.* Dkt. 1-1 (Ex. 2). The XPA contained an arbitration provision, Article 19, stating:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the Judicial Arbitration and Mediation Service (JAMS) in accordance with its Commercial Arbitration Rules. The arbitration hearing shall take place in San Diego California before a single arbitrator. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

*Id.* at 19.

On July 12, 2019, defendant and DaCosta formed plaintiff Teleport Mobility. Dkt. No. 1 ¶ 27. Plaintiff Northern Lights was formed as a subsidiary of Teleport Mobility. *Id.* ¶ 6. On November 19, 2019, defendant and DaCosta, signing on behalf of Teleport Mobility, entered into an Employee Proprietary Information and Inventions Agreement ("Employee Agreement"). *Id.* ¶ 8; 1-1 (Ex. 6). The Employee Agreement does not contain an arbitration provision. *See* Dkt. No. 1-1 (Ex. 6).

On January 14, 2021, defendant sent DaCosta an email stating that defendant was "quitting Teleport" and "taking . . . [defendant's] inventions, intellectual property, diagrams, trade secrets, internet domains, software, [and] everything that [defendant] conceived before Teleport incorporated." Dkt. No. 1-1 (Ex. 7).

On February 3, 2021, plaintiffs Teleport Mobility and Northern Lights filed a complaint against defendant alleging (1) violation of the Defend Trade Secrets Act, (2) violation of California Uniform Trade Secrets Act, (3) breach of contract, (4) violation of the Comprehensive Compute data Access and Fraud Act, (5) violation of Lanham Act, (6) conversion, (7) intentional interference with Contractual Relations, (8) breach of fiduciary duty, and (9) unfair business practices. Dkt. No. 1. Plaintiffs allege defendant misappropriated plaintiffs' trade secrets and violated the confidentially provisions in the Consulting Agreement, XPA, and Employee Agreement. Dkt. No. 1 ¶¶ 45-133. Plaintiffs requested injunctive relief and damages for defendant's alleged misappropriation. *Id.* ¶¶ 1-7. On March 7, 2021, the Court issued an Order Granting Preliminary Injunction and Evidence Preservation. Dkt. No. 30.

On April 23, 2021, defendant filed a motion to compel arbitration and requested the Court

2

stay this litigation pending arbitration. Dkt. No. 36 at 1. As an alternative, defendant filed a motion to dismiss. Dkt. No. 35. Plaintiffs filed oppositions on May 7, 2021. Dkt. Nos. 42, 43. On May 14, 2021, defendant filed replies.

**LEGAL STANDARD**

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. When a motion to compel arbitration is filed, a "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*.

Generally, when deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015). However, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration exists . . . [and] if the agreement delegates the arbitrability issue to an arbitrator." *Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 530 (2019). If a "contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . [and] possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*. at 529.

**DISCUSSION**

Because contract formation is not a delegable gateway issue, the Court must determine (I) whether a valid arbitration agreement exists and (II) if so, whether the arbitration agreement delegated the issue of arbitrability to the arbitrator. *See Eiess v. USAA Fed. Sav. Bank,* 404 F.Supp.3d 1240, 1247-48 (N.D. Cal. 2019) ("[P]arties may delegate the adjudication of gateway issues to the arbitrator if they clearly and unmistakably agree to do so . . . . The issue of contract

formation, however, is not a delegable gateway issue.") (internal citations omitted).

**I.  Valid Arbitration Agreement Exists**

Defendant argues article 19 of the XPA is a valid arbitration agreement between plaintiffs and defendant. Dkt. No. 36 at 17. Plaintiffs argue there is no agreement to arbitrate because plaintiffs Teleport Mobility and Northern Lights are not signatories of the XPA agreement. Dkt. No. 42 at 4.

"State contract law controls whether the parties have agreed to arbitrate." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Under California law, contract formation requires mutual assent by the parties to be bound. *Id.* (citing *Binder v. Aetna Life Ins. Co.*, 75 Cal.App.4th 832, 850, 89 Cal.Rptr.2d 540 (1999)). However, "[e]quitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Nonsignatories are held to arbitration agreements where the nonsignatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Mundi v. Union Sec. Life Ins. Co.* 555 F.3d 1042, 1046 (9th Cir. 2009). *See also Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 70 Cal.Rptr.3d 605, 612 (2008) (stating California law of equitable estoppel and recognizing that estoppel compels arbitration when nonsignatory knowingly exploits contract containing arbitration clause).

The Court finds that there is a valid arbitration agreement between plaintiffs and defendant. The complaint states defendant "SYWULA and [plaintiff] TELEPORT MOBILITY, including its assignors and predecessors in interest, entered into express written contracts, including . . . [the] Xelerate Partnership Agreement." Dkt. No. 1 at ¶ 64. Plaintiffs knowingly exploited the XPA by bringing this lawsuit against defendant and are, therefore, benefiting from the XPA by seeking damages based on defendant's alleged violation of the XPA's confidentiality provisions.[1] *See*

---

[1] During oral argument, plaintiffs argued that their use of XPA as a basis for their breach of contract claim was made in error. However, plaintiffs continue to rely on the XPA in this lawsuit and have not filed a motion seeking leave to amend their complaint.

4

*Comer*, 436 F.3d at 1102 (finding nonsignatory did not knowingly exploit agreement because nonsignatory did not seek to enforce the terms of the agreements and did not bring lawsuit based on the agreements). Moreover, plaintiffs admitted that "DaCosta is an officer, member and owner of [Teleport Mobility and Northern Lights]." Dkt. No. 42 at 10. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("Equitable estoppel typically applies to third parties who benefit from an agreement made between two primary parties"). Accordingly, the Court finds that there is a valid arbitration agreement between plaintiffs and defendant.

## II. Arbitration Agreement Delegates Arbitrability Issue to an Arbitrator

Having found that a valid arbitration agreement exists, the Court determines whether the XPA delegates arbitrability to the arbitrator. *Schein,* 139 S.Ct. at 530. Defendant argues the XPA delegates arbitrability because the arbitration provision states "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the Judicial Arbitration and Mediation Service (JAMS) in accordance with its Commercial Arbitration Rules." Dkt. No. 36 at 13. Defendant asserts JAMS Commercial Arbitration Rule 11[2] grants the arbitrator authority to determine jurisdiction and arbitrability issues. *Id.* Plaintiffs argue there is no clear and unmistakable evidence that the parties delegated arbitrability because the Consulting Agreement and Employee Agreement do not contain arbitration provisions. Dkt. No.

---

[2] Defendant provided a declaration and exhibit of JAMS rule 11. Dkt. No. 36-2 (Ex. 3). Rule 11 states:

> (a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.
> (b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.
> (c) Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS. (d) The Arbitrator may, upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may be altered only in accordance with Rules 22(i) or 24.

5

42 at 6.

The Supreme Court has "consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable evidence.'" *Schein*, 139 S.Ct. at 530. Clear and unmistakable evidence of an agreement to arbitrate arbitrability "might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (internal citations omitted). Where there is no evidence that the parties engaged in conduct demonstrating assent, the Court considers the terms of the arbitration agreement. *Id*.

The Court finds that there is clear and unmistakable evidence that arbitrability was delegated to the arbitrator. In *Brennan*, the Ninth Circuit held that an agreement's incorporation of the American Arbitration Association's ("AAA") arbitration rules, which provided that an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the … validity of the arbitration agreement," was clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Similar to the AAA rules, JAMS rule 11 grants the arbitrator with the authority to rule on his or her own jurisdiction. *See* Dkt. No. 36-2 (Ex. 3) (stating the arbitrator "has the authority to determine jurisdiction and arbitrability issues as a preliminary matter" and "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement . . .shall be submitted to and ruled on by the Arbitrator."). Accordingly, the Court finds that the XPA's incorporation of the JAMS rule is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010) (finding clear and unmistakable evidence to arbitrate arbitrability where agreement provided "[t]he Arbitrator ... shall have exclusive authority to resolve any dispute relating to the ... enforceability ... of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."); *Wynn Resorts, Ltd. V. Atlantic-Pacific Capital, Inc.,* 497 Fed.Appx. 740, 2012 WL 5489970 (9th Cir. 2012) ("[T]he incorporation of the JAMS rules and their employment of a broad arbitration provision establish their clear and unmistakable intent to submit the issue of arbitrability to arbitration.")

The Court is unpersuaded by plaintiffs' argument. In *Portland General Electric*, the Ninth Circuit considered whether there was clear and unmistakable evidence delegating arbitrability where the contact at issue included an arbitration clause while a separate but related contract did not have an arbitration clause. *Portland General Electric v. Liberty Mutual Insurance Company*, 862 F.3d 981, 985 (9th Cir. 2017). The Ninth Circuit rejected the argument that the related contract lacking the arbitration clause precluded delegation of arbitrability because the effect of the related contract on arbitrability was a question of scope rather than arbitrability. *See id*. at 985-86 ("[plaintiff] contends that the [arbitration provisions] do not govern the present dispute because the Bond lacks an arbitration clause . . . . We disagree . . . whether [plaintiff] has . . . agreed to arbitrate its dispute . . . [is a question] of the scope of the arbitration agreement . . . delegated to the arbitrators."). Similar to the contracts in *Portland*, this case involves contracts with and without arbitration provisions. The effect of the contracts without arbitration provisions on the XPA agreement is a question of scope and should be determined by the arbitrator. *Cf. Ackberg v. Citicorp USA, Inc.,* 898 F.Supp.2d 1172, 1176 (N.D. Cal. 2012) (compelling arbitration where plaintiff received agreements with and without arbitration provisions and stating "the original agreement and subsequent modifications . . . do not necessarily control the enforceability of the arbitration clause presently in effect.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is **GRANTED** and the case is **STAYED** pending arbitration. *See* 9 U.S.C. § 3 ("[T]he court. . .upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . [shall] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). Because Article 15(e) of the XPA warrants injunctive relief for breach of confidentiality and the Court determined injunctive relief is necessary to maintain the status quo, Dkt. 1-1 (Ex. 2), the Court's Order Granting Preliminary Injunction and Evidence Protection Order will remain in effect pending arbitration. *See Toyo Holdings of Americas Inc. v. Continental Tire North America, Inc.,* 609 F.3d 975, 981 (9th Cir. 2010) ("[A] district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration

7

process—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied"). Defendant's motion to dismiss is **DENIED** as **MOOT**.

**IT IS SO ORDERED**.

Dated: June 4, 2021

_____
SUSAN ILLSTON
United States District Judge