UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELEPORT MOBILITY, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>KRZYSZTOF SYWULA,<br><br>    Defendant. | Case No. 21-cv-00874-SI<br><br>**ORDER RE: MOTIONS TO CONFIRM OR VACATE ARBITRATION AWARD**<br>Re: Dkt. Nos. 81, 85 |

The parties return to this Court long after the Court granted defendant's motion to compel arbitration and stayed proceedings on June 4, 2021. Dkt. No. 49. Having now received an arbitration award in their favor, plaintiffs ask the Court to lift the stay and confirm the award. Dkt. No. 81. Conversely, defendant asks the Court to dismiss plaintiffs' petition or, alternatively, vacate the arbitrator's award. Dkt. No. 85. For the reasons stated below, the Court lifts the stay and confirms the award in part, but holds that it lacks jurisdiction to confirm the award in full. The Court denies defendant's motion to vacate the award, leaving the unconfirmed parts of the award for the San Diego County Superior Court to consider.

**BACKGROUND**

After the Court compelled the parties to arbitration, they continued to develop a lengthy and contentious history of litigation. For purposes of resolving the present motions, the Court recites the following limited facts and procedural history.

Plaintiffs Teleport Mobility, Inc. and Northern Lights, LLC filed a complaint against defendant Krzysztof Sywula on February 3, 2021, alleging violations of federal trademark and trade secrets law alongside numerous state law causes of action. Dkt. No. 1. On June 4, 2021, the Court

granted defendant's motion to compel arbitration and stayed the proceedings pending arbitration. Dkt. No. 49. The parties initiated a Judicial Arbitration and Mediation Service (JAMS) arbitration on June 11, 2021. Dkt. No. 81-1 ("Pls.' Mot.") at 3; Dkt. No. 85 ("Def.'s Mot.") at 3.

Before the arbitration could proceed, defendant filed three successive lawsuits in federal and state court in southern California.[1] On August 12, 2021, defendant filed a lawsuit in San Diego County Superior Court, alleging contract and employment-based claims against plaintiffs and individuals connected to plaintiffs. Dkt. No. 85-3, Ex. 1 (*Sywula v. DaCosta*, 37-2021-00034541-CU-FR-CTL (San Diego Super. Ct.) ("*Sywula I*")). Three days later, defendant filed an action against plaintiff Teleport and individual defendants for correction of inventorship in the U.S. District Court for the Southern District of California. Dkt. No. 85-3, Ex. 2 (*Sywula v. DaCosta*, 21-cv-01450-BAS-AGS (S.D. Cal.) ("*Sywula II*")). Twenty months later, on April 25, 2023, defendant filed one more lawsuit in San Diego County Superior Court against Teleport and individual defendants for breach of contract.[2] Dkt. No. 85-3, Ex. 6 (*Sywula v. DaCosta*, 37-2023-0017325-CU-BC-CTL (San Diego Super. Ct.) ("*Sywula III*")).[3]

The courts sent all three additional cases to the arbitration compelled by this Court. On August 5, 2022, the state court ordered the parties in *Sywula I* to arbitration at the request of Teleport and Northern Lights and over Sywula's opposition. Pls.' Mot. at 3; Def.'s Mot. at 3; Dkt. No. 85-3, Ex. 6. On July 18, 2023, the federal court did the same for *Sywula II* after Teleport's motion to compel arbitration that Sywula again contested. Dkt. No. 85-3, Ex. 7. One month later, Sywula and the two remaining individual defendants in *Sywula III* stipulated to send that matter to the arbitration, which the state court ordered on September 11, 2023. Dkt. No. 85-3, Ex. 8.

---

[1] Defendant requests judicial notice of various documents associated with these proceedings. Dkt. No. 85-3. Plaintiffs reference these same proceedings in their papers. The Court grants defendant's request and takes judicial notice of these court filings and orders. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

[2] Teleport was subsequently dismissed from this final lawsuit, leaving only the individual defendants. Pls.' Mot. at 4.

[3] The individual defendants across the three additional cases are: Melville Dacosta (*Sywula I*), Russel Davis (*Sywula I*), Vincent Colletti (*Sywula I*, *Sywula II*, *Sywula III*), and Alexis DaCosta (*Sywula II*, *Sywula III*).

In the JAMS proceeding, Sywula sought to shift his $60,000 in arbitration fees onto Teleport, citing precedent requiring employers to pay the costs of arbitration in employment disputes, but the arbitrator denied the request. Def.'s Mot. at 4. Sywula then asked the San Diego County Superior Court in *Sywula I*—the contract and employment-based case—to require Teleport to pay the full cost or pull the matter in that case back to superior court. Dkt. No. 85-3, Ex. 9. That court declined to intervene in an order dated July 12, 2024, stating "the merits of [Sywula's] arguments are more properly raised on a motion to vacate the arbitration award after the proceedings have concluded." Dkt. No. 85-3, Ex. 12. As a result of Sywula's continued nonpayment, and pursuant to JAMS rules, the arbitrator prohibited him from presenting affirmative claims but allowed him to defend against plaintiffs' claims. Pls.' Mot. at 4; Def.'s Mot. at 4.

Originally set for August 9, 2023, the arbitration hearing was continued multiple times until September 16, 2024. Dkt. No. 88-1 ("Pls.' Reply"), Exs. 1-3. On January 11, 2024, the arbitrator set the final discovery cutoff for August 16, 2024. *Id.*, Ex. 3. On July 16, 2024, Sywula's attorney sent notices for ten depositions to take place in San Diego between August 7 and August 15, 2024. Dkt. No. 85-2, Ex. F, Ex. 1. Then, on August 5, 2024, Sywula's attorney abruptly withdrew from the representation. Def.'s Mot. at 5. At a status conference the following day, the arbitrator denied Sywula's request for a further continuance to obtain new counsel. *Id.*; Pls.' Reply at 3.

The parties interpret very differently what happened next regarding the scheduled depositions. Plaintiffs assert that during the August 6 conference Sywula "indicated he would not be prepared to go forward with the depositions he had noticed." Pls.' Reply at 3. Nonetheless, counsel for Teleport appeared with a witness at the San Diego location for the first scheduled deposition the next morning. *Id.* Counsel for the individual defendants from the *Sywula* cases took a different approach, telling Sywula on August 7, 2025 that his clients would not be appearing at any of the previously noticed depositions, explaining, "As I indicated in the telephone call yesterday with the Arbitrator (Judge Cannon) I would not have my clients attend any previously noticed depositions and Judge Cannon agreed." Dkt. No. 85-1, Ex. B. After further back-and-forth with Sywula, the same counsel wrote, "You obviously did not listen to the telephone conversation yesterday with Judge Cannon. Judge Cannon indicated that the depositions set by your previous

3

1  counsel would not go forward." *Id.* According to defendant, the arbitrator cancelled the depositions
2  on the August 6 conference call. Def.'s Mot. at 5. Then "Sywula conferred with opposing counsel
3  to keep the depositions in place and take them himself" but "they could not agree on a location" and
4  counsel for the individual defendants "refused to make his clients available at all." *Id.* at 6. Plaintiffs
5  provide greater context, explaining that, on the evening of August 6, the now-unrepresented Sywula
6  attempted to change the location for the depositions beginning the following day from San Diego to
7  his residence in Folsom, California, 500 miles away. Pls.' Reply at 3. Opposing counsel considered
8  the notice ineffective and no depositions were taken. *Id.*

9  On August 8, 2024, Sywula submitted one more request to continue the discovery cutoff and
10 hearing dates. Dkt. No. 85-2, Ex. U. The arbitrator denied the request on August 19, 2024, finding
11 "Sywula makes no showing of good cause for a continuance." *Id.*, Ex. V.

12 The arbitration commenced on September 19, 2024, with Sywula representing himself. Pls.'
13 Mot. at 4; Def.'s Mot. at 6. As an initial matter, the arbitrator dismissed the individual defendants
14 from *Sywula I*, *Sywula II*, and *Sywula III* who were subject only to Sywula's affirmative claims,
15 since Sywula's nonpayment of fees foreclosed those claims. *Id.* Plaintiffs then asked the arbitrator
16 to exclude Sywula's exhibits and witness list, because he had submitted it on September 10, five
17 days after the deadline set by the arbitrator's scheduling order. Dkt. No. 88-2, Ex. Z. The arbitrator
18 granted plaintiffs' motion, but later allowed Sywula to call two witnesses besides himself. Pls.'
19 Mot. at 4; Def.'s Mot. at 7-8. In total, the arbitration lasted three days and the parties submitted
20 closing arguments in writing. Pls.' Mot. at 4.

21 The arbitrator issued an initial award on December 12, 2024, finding that "Claimant [the
22 plaintiffs in this litigation] is the prevailing party in all regards." Dkt. No. 75-1. The arbitrator
23 awarded plaintiffs $1.5 million in damages and an additional $500,000 in attorney's fees. *Id.* On
24 January 8, 2025, the arbitrator issued a revised final award clarifying that the arbitration covered the
25 matters in all four lawsuits and that "Claimants and Counter-Respondents"—i.e. plaintiffs and the
26 individuals sued by Sywula—were "the prevailing parties in all regards." Dkt. No. 79, Ex. 2.

27 Plaintiffs filed a motion in this Court to confirm the award on January 29, 2025. Dkt. No.
28 81. Defendant opposes and filed a motion to vacate the award on February 12, 2025. Dkt. No. 85.

4

In parallel, Sywula filed on February 5, 2025 a petition to vacate the arbitration award in San Diego County Superior Court and a hearing was set for May 16, 2025. Def.'s Mot. at 9; Pls.' Reply at 8. Teleport requested in response that the state court hear its competing motion to confirm the award at the same hearing. *Id.*

**LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), any party to an arbitration may apply to a federal court of competent jurisdiction for confirmation of an arbitration award. 9 U.S.C. § 9; *Badgerow v. Walters*, 596 U.S. 1, 4 (2022). When evaluating a motion to confirm, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10 allows a court to vacate an award where there was corruption, fraud, or misconduct, or where arbitrators exceeded their powers. *Id.*, § 10. A court may also modify or correct an award in narrow circumstances delineated by section 11 of the FAA. *Id.*, § 11. In short, the FAA affords federal courts "extremely limited authority" in their review of arbitration awards. *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute . . . ." *Id.* at 994. However, a court may "vacate an award that evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law." *Id.* at 998.

**DISCUSSION**

**I.     Subject Matter Jurisdiction**

The Court must first establish whether subject matter jurisdiction exists to consider the present motions. The FAA itself does not establish federal question jurisdiction; the parties must have "an independent jurisdictional basis" to seek federal court intervention under the act. *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (internal quotation marks and citations removed). In considering motions to compel arbitration under the FAA's section 4, a court may "look through" to the underlying complaint and hear the motion to compel when it would have jurisdiction over the

5

underlying substantive dispute. *Id.* at 62; 9 U.S.C. § 4.

However, the Supreme Court held in 2022 that the "look through" approach does not extend to motions to confirm or vacate arbitration awards under sections 9 and 10. *Badgerow*, 596 U.S. at 5. A federal court thus only has subject matter jurisdiction if the "face of the application [to confirm or vacate] itself . . . shows that the contending parties are citizens of different States (with over $75,000 in dispute) . . . [o]r if it alleges that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief." *Id.* at 9. The Supreme Court reasoned that, post-award, "the underlying dispute is not now at issue." *Id.* at 18. The resolution of the arbitration is a contractual question that "typically belongs in state courts." *Id.*

The posture in *Badgerow* differs from this case in one important respect, but whether this difference dictates a different jurisdictional result is unclear. In *Badgerow*, the parties did not appear in federal court until after the arbitration had concluded. 596 U.S. at 5-6. Here, in contrast, the dispute started in this Court with valid federal subject matter jurisdiction, the Court compelled the parties to arbitration, and now the parties have returned with motions to confirm or vacate the arbitrator's award. Do the narrow jurisdictional guardrails placed by the *Badgerow* decision extend to this circumstance? The majority opinion in *Badgerow* did not address the question, but the dissent interpreted the Court's holding that way:

> Where the parties' underlying dispute involves a federal question (but the parties are not diverse), the majority holds that a party can ask a federal court to order arbitration under Section 4, but it cannot ask that same court to confirm, vacate, or modify the order resulting from that arbitration under Section 9, 10, or 11.

*Id.* at 24-25 (Breyer, J., dissenting).[4]

Plaintiffs raise an earlier Supreme Court decision to support a finding of jurisdiction, *Cortez Byrd v. Bill Harbert Construction Co.*, 529 U.S. 193 (2000). *See* Dkt. 88 at 4. In *Cortez Byrd*, the Supreme Court ruled that the venue provisions of sections 9 through 11 of the FAA were permissive,

---

[4] Justice Breyer proceeded to question the practical implications of such a holding: "But why prohibit a federal court from considering the results of the very arbitration it has ordered and is likely familiar with? Why force the parties to obtain relief—concerning arbitration of an underlying *federal*-question dispute—from a state court unfamiliar with the matter?" *Badgerow*, 596 U.S. at 25 (Breyer, J., dissenting).

6

1  allowing motions to confirm, vacate, or modify arbitration awards in any district proper under the
2  general venue statute. *Id*. at 195.  While that case focused on questions of venue, not subject matter
3  jurisdiction, the Court noted,

> We have, however, previously held that the court with the power to stay the action under § 3 has the further power to confirm any ensuing arbitration award. *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275-276, 52 S.Ct. 166, 76 L.Ed. 282 (1932) ("We do not conceive it to be open to question that, where the court has authority under the statute . . . to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, *ultra vires* or other defect").

*Id.* at 202.  Defendant argues that *Cortez Byrd* deserves less consideration since it was decided before *Badgerow* and focuses on venue, not jurisdiction. Dkt. No. 85 at 14.

After *Badgerow*, the Supreme Court has continued to return to arbitration matters.  In *Smith v. Spizzirri*, the Court held that the FAA does not allow a court to dismiss a case when a party asks for a stay under section 3 of the act.  601 U.S. 472, 474 (2024).  The Court reasoned that

> staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts. The FAA provides mechanisms for courts **with proper jurisdiction** to assist parties in arbitration by, for example, appointing an arbitrator, see 9 U.S.C. § 5; enforcing subpoenas issued by arbitrators to compel testimony or produce evidence, see § 7; and facilitating recovery on an arbitral award, see § 9. Keeping the suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections. District courts can, of course, adopt practices to minimize any administrative burden caused by the stays that § 3 requires.

*Id.* at 478 (emphasis added).  While this language suggests that courts should retain jurisdiction over pending arbitration matters, the caveat "with proper jurisdiction" leaves the relevant question here open.  Then, on February 26, 2025, the Court released a new opinion that acknowledges the question of whether or how to apply *Badgerow* when the parties started in federal court, but refuses to answer it. *Waetzig v. Halliburton Energy Servs., Inc.*, -- S.Ct. --, No. 23-971, 2025 WL 608110, at *3 (U.S. Feb. 26, 2025).

In the absence of Supreme Court guidance, the lower courts have split on whether a federal court's previous consideration of the dispute serves as a "jurisdictional anchor" to satisfy the requirements of *Badgerow*.  Plaintiffs rely on *Kinsella v. Baker Hughes Oilfield Operations, LLC*,

7

66 F.4th 1099 (7th Cir. 2023).  There, the plaintiff sued in federal district court and the court stayed the case pending arbitration, then later dismissed the case without prejudice and with leave to reinstate after the arbitration concluded.  *Id.* at 1102.  When the arbitrator ruled for the defendants, the plaintiff filed a motion to vacate with the district court, which the court denied.  *Id.*  On appeal, the circuit court asked for supplemental briefing on the impact of the recent *Badgerow* decision on its jurisdiction, but ultimately concluded that since plaintiff originally filed a federal law claim in federal court, jurisdiction continued through the motion to vacate.  *Id.* at 1103.  And while the plaintiff did not plead diversity jurisdiction in the original complaint, the court found that "the parties' subsequent filings sufficiently allege that the parties are diverse and that the amount in controversy exceeds $75,000.  So, diversity is another basis for jurisdiction in the underlying suit." *Id.* at 1103.

In counterpoint, defendant raises *SmartSky Networks, LLC v. DAG Wireless Ltd.*, where the Fourth Circuit declined to follow *Kinsella* and held that *Badgerow* precluded a district court from confirming an arbitration award under similar circumstances.  93 F.4th 175, 178, 184 n.8 (4th Cir. 2024).  As in *Kinsella*, the plaintiff in *SmartSky* filed suit in district court, then the court stayed the case pending arbitration.  *Id*. at 178-79.  The plaintiff prevailed at arbitration and the district court granted its motion to confirm the award.  *Id*. at 179-80.  On appeal, the plaintiff argued that "the district court had subject matter jurisdiction to confirm the award because a complaint that asserts federal claims acts as a 'jurisdictional anchor' for subsequent FAA Section 9 and 10 applications when the case was previously stayed pursuant to Section 3 of the FAA." *Id.* at 181.  While *Kinsella* devoted two paragraphs to the question, the Fourth Circuit provided a lengthy analysis of *Badgerow*, *Cortez Byrd*, and *Marine Transit Corp.*, ultimately rejecting the "jurisdictional anchor" approach.  *Id.* at 181-87.  Echoing the reasoning in *Badgerow*, the *SmartSky* court found that the original complaint—the "jurisdictional anchor"—"was no longer pending before the district court because all the issues contained therein were consolidated in the arbitration." *Id.* at 183.  Whether the parties had previously come before the court or not was "a distinction without a difference." *Id.* at 184.

The Ninth Circuit has not considered the extension of *Badgerow* under these circumstances and district courts within this circuit are similarly split.  Decisions in the Central District of

1    California and the District of Hawaii have found an independent basis for jurisdiction necessary to
2    consider an arbitration award, even when the federal court had jurisdiction over the initial
3    complaints. *Flynn v. Credit Acceptance Corp.*, No. 221CV07019MCSGJS, 2023 WL 5434443, at
4    *1 (C.D. Cal. Feb. 21, 2023); *Dunbar v. Airbnb, Inc.*, No. CV 21-00451 JMS-WRP, 2022 WL
5    17067455, at *5-6 (D. Haw. Nov. 17, 2022). But a separate decision from the Central District of
6    California distinguished *Badgerow* on the basis that the district court had compelled the arbitration
7    and therefore retained jurisdiction to confirm the award. *Roma Mikha, Inc. v. S. Glazer's Wine &
8    Spirits, LLC*, No. 8:22-CV-01187-FWS-ADS, 2024 WL 5372754, at *3 (C.D. Cal. Nov. 21, 2024).

9    Absent definitive guidance from the Ninth Circuit or the Supreme Court, the Court declines
10   to extend *Badgerow*'s holding to the circumstances here. Defendant's concerns about artificial
11   distinctions regarding a "jurisdictional anchor" might apply where the parties come to federal court
12   in the first instance to seek judgment on a motion to compel, but that is not the case in this lawsuit.
13   Rather, plaintiffs filed a complaint based in federal law and the Court exercised federal question
14   jurisdiction over the dispute up through defendant's motion to compel arbitration. Retaining
15   jurisdiction over the issues already before the Court "comports with the supervisory role that the
16   FAA envisions for the courts" and "makes good sense." *See Smith v. Spizzirri*, 601 U.S. at 478.

17   However, the fact that the arbitrator's award incorporates and resolves claims raised only in
18   *Sywula I*, *Sywula II*, and *Sywula III* and not in this case complicates the Court's analysis. For the
19   claims and the parties not previously before the Court, *Badgerow* applies. This is the first time those
20   issues and parties have come before this Court and the Court needs an independent jurisdictional
21   basis to consider them, but finds none. Accordingly, the Court only retains jurisdiction over the
22   portions of the arbitrator's award that concern the issues and parties previously before the Court,
23   namely the affirmative claims made by plaintiffs Teleport and Northern Lights against defendant
24   Sywula.

25

26   **II.     Abstention**
27   Next, defendant argues that the Court should abstain and defer to the concurrent proceeding
28   in the San Diego County Superior Court. Def.'s Mot. at 15-16. Defendant refers to the relevant

9

1    abstention criteria outlined in *Colorado River Water Conservation District v. United States*, 424
2    U.S. 800, 818 (1976)—"such factors as the inconvenience of the federal forum; the desirability of
3    avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent
4    forums."[5]  *Colorado River*, 424 U.S. at 818 (citations omitted).  Courts must consider these factors
5    together and abstention under these criteria is "exceptional": "[o]nly the clearest of justifications
6    will warrant dismissal." *Id.* at 818-19.

7    There can be no dispute that the actions in this case—both the initial litigation and the present
8    motions regarding the arbitration award—were presented to this Court first, before the parallel
9    proceedings in the state court.  Nor does defendant directly argue that this Court is an inconvenient
10   forum for the parties.  Rather, defendant seems to argue that abstaining and deferring to the state
11   court is appropriate because (1) the state court considered and postponed a review of the arbitrator's
12   denial of fee-shifting six months prior to the motions at issue here; (2) the fee-shifting question
13   involves the employment claims at issue only in *Sywula I*; and (3) the individual defendants who
14   were parties in *Sywula I*, *Sywula II*, and *Sywula III* have not sought to confirm the award in this
15   Court.  Def.'s Mot. at 15-16.  In essence, defendant is arguing that action from this Court does not
16   or cannot resolve all of the issues for all of the parties, and therefore abstention would prevent
17   piecemeal litigation.

18   The Court recognizes that ruling on only part of the arbitrator's award will result in
19   piecemeal litigation, but since the other factors weigh against abstention the Court does not find this
20   to be the "exceptional" case that warrants abstention under *Colorado River*.  *See* 424 U.S. at 818.

21

22   **III.    Confirm, Vacate or Modify**

23   As noted above, the Court must confirm the arbitration award unless there are grounds to
24   vacate or modify the award within the parameters of the FAA's delegated authority.  Section 10 of
25   the FAA allows vacatur of an award:
26        (1) where the award was procured by corruption, fraud, or undue

---

[5] Defendant also cites *Younger v. Harris*, 401 U.S. 37 (1971) without further commentary about that case.  The type of abstention discussed in *Younger* is not at issue here.

10

means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In short, courts "ask whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016). Section 11 allows a court to modify or correct an award:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. "The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." *Id.* Defendant asserts four separate grounds warrant vacatur.

First, defendant argues that the arbitrator violated the bounds of fundamental fairness when he denied defendant's request for a continuance when defendant's counsel "unexpectedly withdrew" on August 5, 2024. Def.'s Mot. at 16-18. At that point, the close of fact discovery was less than two weeks away and the arbitration hearing was about six weeks away. The arbitrator found that Sywula had made "no showing of good cause for a continuance, pursuant to Cal. Rules of Court, rule 3.1332(c)." Dkt. No. 85-2, Ex. V. Plaintiffs maintain that the arbitrator's decision was not tantamount to "misconduct," the high threshold showing required by the FAA. Dkt. No. 91 at 15; 9 U.S.C. § 10. The Court agrees with plaintiffs. The arbitrator had already continued the hearing twice at defendant's request—and over plaintiffs' objections—from August 2023 to September 2024. Dkt. No. 91-1, ¶¶ 16-17. The arbitrator could have reasonably concluded that the pressure of the upcoming discovery deadline was a problem of defendant and defendant's counsel's own making when they scheduled ten depositions in the last ten days of the months-long discovery

11

window.  Moreover, defendant still had six weeks to find substitute counsel for the hearing.  Under these circumstances, the arbitrator was not "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown."  *See* 9 U.S.C. § 10.

Second, defendant asserts that "the arbitrator prejudiced [his] rights by canceling his 10 pending depositions on August 6, 2024."  Def.'s Mot. at 18-20.  Sywula asserts in a declaration that the arbitrator "*sua sponte* canceled all of my pending depositions over my objection."  Dkt. No. 85-1, ¶ 7.  Counsel for plaintiffs, in his own declaration, explains that at a status conference on August 6, 2024 "Sywula indicated he would not be prepared to go forward with the depositions he had noticed" and that the arbitrator "did not order the depositions cancelled; he only expressed that he did not expect they would go forward."  Dkt. No. 91-1, ¶ 20.  Plaintiffs' counsel received from Sywula emailed notices of depositions later that night, changing the location of the depositions to begin the next day from San Diego to Folsom, California.  *Id.*, ¶ 21, Ex. 10.  Unsurprisingly, plaintiffs objected.  *Id.*, ¶ 22, Ex. 11.  No transcript of the August 6, 2024 status conference with the arbitration has been provided to the Court, but a reasonable interpretation is that the parties and the arbitrator reached a mutual understanding on that call that Sywula would not be proceeding with the ten depositions as previously noticed by his withdrawn counsel.  The Court does not see evidence sufficient to indicate that the arbitrator violated tenets of fundamental fairness in any action or inaction related to defendant's untaken depositions.

Third, defendant claims that the arbitrator prejudiced him by excluding his written evidence at the arbitration hearing.  Def.'s Mot. at 20.  The arbitrator's amended scheduling order required the parties to exchange exhibit lists fourteen days prior to the start of the hearing.  Dkt. No. 91-1, Ex. 8.  When defendant provided his exhibits only nine days before the hearing, the arbitrator excluded them.  Dkt. No. 85-2, Exs. Z, BB at 10-11.  The Court is sympathetic to the frustration a pro se party must feel to have substantive evidence excluded based on a technicality, yet the Court cannot say that an arbitrator violates fundamental fairness when he upholds the pre-established parameters of the arbitration.

Fourth and finally, defendant argues that the arbitrator "exceed his authority and manifestly disregarded the law by barring Sywula's affirmative employment claims."  Def.'s Mot. at 20-22.

12

1  Before considering the merits of such an argument, the Court must determine whether it is the
2  appropriate court to even consider the question. The arbitrator barred defendant's affirmative claims
3  because defendant did not pay his allotted share of the arbitrator's fees. Defendant has consistently
4  maintained the law requires that his employer Teleport pay his share of fees because the arbitration
5  included employment-based claims that defendant asserted in the *Sywula I* lawsuit in state court.
6  Sywula has brought the fee shifting question to the *Sywula I* court. Dkt. No. 85-3, Ex. 9. That court
7  declined to intervene, determining that it was more appropriate to consider the question after the
8  award had been issued. Dkt. No. 85-3, Ex. 12. As this argument concerns only claims over which
9  this Court lacks jurisdiction, the Court therefore leaves this question for the state court to decide
10 when it considers the portions of the arbitration award outside of this Court's jurisdiction.

11 In summary, setting aside the question of Sywula's affirmative claims, the Court does not find the first three issues discussed above individually or collectively prove the arbitration was fundamentally unfair. The Court recognizes that the late withdrawal of Sywula's counsel placed Sywula in a very challenging position, but the arbitrator's response and subsequent actions were reasonable as he attempted to bring the three-year proceeding to a just conclusion. The Court finds insufficient cause to vacate the award and will therefore confirm the parts of the award over which it holds jurisdiction.

Specifically, the Court confirms paragraphs 2, 3, and 4 in the "Award" section of the arbitrator's January 8, 2025 final award. Dkt. No. 79, Ex. 2 at 3. That section states in full:

**Award**

1.) Claimants and Counter-Respondents are the prevailing parties in all regards.

2.) Respondent/Counter-Claimant is not an inventor of any claim in any patent-in-suit and cannot be named as such.

3.) Respondent/Counter-Claimant is not an owner of any patent-in-suit or other intellectual property held by Teleport.

4.) Respondent shall pay, within 30 days, $1,500,000 in damages to Claimants.

5.) Respondent shall pay, within 30 days, an additional $500,000.00 in Attorney's fees and costs to Claimant.

*Id.* Paragraphs 2, 3, and 4 concern the affirmative claims brought by the plaintiffs in this Court against Sywula and the Court confirms the arbitrator's rulings regarding these claims. The Court

will not confirm paragraph 1 in the award section because it has no jurisdiction over the claims brought against the counter-respondents (the individual defendants in the other lawsuits) or against Teleport and Northern Lights in those cases. Similarly, the Court will not confirm paragraph 5 in the award section since the attorney's fees award encompasses the litigation across all four lawsuits, beyond the reach of the Court's jurisdiction. The Court leaves the remaining unconfirmed pieces of the arbitrator's award for the state court to consider at its upcoming hearing.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby lifts the stay of proceedings, GRANTS in part and DENIES in part plaintiffs' motion to confirm the arbitration award, and DENIES defendant's motion to dismiss or strike plaintiffs' petition or alternatively vacate the award.

**IT IS SO ORDERED**.

Dated: March 18, 2025

SUSAN ILLSTON
United States District Judge