UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TELEPORT MOBILITY, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>KRZYSZTOF SYWULA,<br><br>　　　　Defendant. | Case No. 21-cv-00874-SI<br><br>**ORDER DENYING MOTION TO STAY ENFORCEMENT WITHOUT BOND AND DENYING AS MOOT APPLICATION FOR SHORT-TERM STAY**<br><br>Re: Dkt. Nos. 102, 111 |

　　　　On March 18, 2025, this Court confirmed an arbitration award against defendant in the amount of $1,500,000. Dkt. No. 95. A broader history of this case is set forth in that order. *See id.* The Court entered judgment on the award two days later. Dkt. No. 96. Defendant timely appealed the Court's judgment to the Ninth Circuit, where the opening brief is due August 1, 2025. *See* Dkt. Nos. 97, 98; Case No. 25-2182, Dkt. No. 5 (9th Cir.). Presumably, defendant may challenge whether the Court had jurisdiction to confirm the award in light of the Supreme Court's ruling in *Badgerow v. Walters*, 596 U.S. 1 (2022), as that remains an open question in the Ninth Circuit. *See* Dkt. No. 95 at 8-9.

　　　　This Court did not confirm the $500,000 in attorney's fees awarded by the arbitrator due to a lack of complete jurisdiction, *see* Dkt. No. 95 at 13-14, but that portion of the award has since been confirmed by the San Diego County Superior Court after a hearing on May 16, 2025, *see* Dkt. No. 103-1 ("Decl. Ludwig"), Ex. 1.

　　　　Defendant now requests that the Court stay execution of its judgment pending appeal without requiring a bond or, alternatively, allow defendant to set aside some of his non-public shares in Teleport Mobility, Inc. as security. Dkt. No. 102 ("Mot.") at 1. Pursuant to Civil Local Rule 7-1(b), the Court determined that the motion is suitable for resolution without oral argument, and

1  VACATED the June 24, 2025 hearing.  For the reasons stated below, the Court DENIES defendant's
2  motion.  The Court ORDERS that, to stay enforcement of the judgment, defendant must post a bond
3  of $750,000.

**BACKGROUND**

Defendant's papers suggest that he may be on the brink of bankruptcy.  Defendant asserts that he has debts that total "at least $316,857," including credit card debts, money owed to the IRS, debts to attorneys, a cash loan of $106,133.08, and other personal loans or lines of credit.  Dkt. No. 102-1 ("Decl. Sywula") ¶ 3.  Defendant notes that in March 2024 he could not afford an arbitration payment of $60,283.74 and that his "financial circumstances are unchanged" from that time.  *Id.* ¶ 4.  Defendant states that his family's monthly income is $15,206.36 while their known expenses are $14,700.  *Id.* ¶ 5.  The specific budgetary expense categories defendant lists (rent, insurance, cell phones, expenses related to children, food, utilities, gas and car expenses, and clothes and hygiene expense) add up to $6,019.55 in expenses.  *Id.*  Defendant further asserts the minimum monthly payment on the family's credit cards is $4,143.64 and that he owes ongoing legal expenses of an unidentified amount.  *Id.*  As plaintiffs note in their opposition, these figures are identical to those provided in a declaration by defendant in 2023.  Dkt. No. 103 ("Opp'n") at 2; Decl. Ludwig, Ex. 5.

Plaintiffs assert that defendant works for ByteDance, Inc. where, at least in defendant's 2022 deposition, he testified to earning $400,000 in total compensation per year.  Opp'n at 2; Decl. Ludwig, Ex. 2.  Plaintiffs also assert that defendant's wife works as a contractor for Google, according to her public LinkedIn account.  Opp'n at 2; Decl. Ludwig, Ex. 3.  Defendant's filings do not specify where he or any family members are currently employed.

Plaintiffs also submit a 2023 declaration from one of defendant's estranged business partners who reported that defendant had told him about multiple rental properties that defendant owned in Poland.[1]  Decl. Ludwig, Ex. 3.  In a declaration attached to his reply brief, defendant asserts that he

---

[1] Without lodging a formal objection, defendant labels this assertion as "hearsay."  Dkt. No. 110 ("Reply") at 6.  The assertion is admissible as a statement of a party-opponent.  Fed. R. Evid. 801(d)(2)(A).

2

does not own rental properties in Poland or anywhere and does not own any real estate in general. Dkt. No. 110-1 ("Decl. Sywula ISO Reply") ¶ 2. Defendant further declares that he has "not tried to hide any assets in Poland and [has] no plans to do so." *Id.* ¶ 3.

Defendant claims his "sole asset of significant value" is 2.4 million shares of Teleport Mobility, Inc. common stock, about 45% of the company's stock. Decl. Sywula ¶ 6. Defendant provides heavily redacted material that indicates that plaintiffs marketed to investors in 2020 that the company could have an initial valuation of $60 million. *Id.* ¶ 8, Ex. B. Defendant further asserts that the company has increased the value of its stock by 50% since then, to $90 million. *Id.* ¶ 10, Ex. C. According to a declaration submitted by plaintiffs, the company has never made any revenue and the stock is not publicly traded. Dkt. No. 103-2 ("Decl. Davis") ¶¶ 6-7. The future value of the shares depends on whether the company can monetize any valid patents "through litigation, licensing, or product development and eventual sales." *Id.* ¶ 8. As such, in plaintiffs' eyes the value of Teleport stock is "indeterminate." *Id.* ¶ 9.

**LEGAL STANDARD**

Rule 62 of the Federal Rules of Civil Procedure provides for an automatic stay of execution on a judgment for thirty days. Fed. R. Civ. P. 62(a). A party may also provide "a bond or other security" to obtain a stay. Fed. R. Civ. P. 62(b). District courts have discretion to set a bond amount or waive a bond requirement. *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012) (citing *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987) and *International Telemeter, Corp. v. Hamlin International Corporation*, 754 F.2d 1492, 1495 (9th Cir. 1985)); *Neo4j, Inc. v. Purethink, LLC*, No. 5:18-cv-07182-EJD, 2024 U.S. Dist. LEXIS 223628, at *3 (N.D. Cal. Dec. 10, 2024). "The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).

The current rule does not specify or require a specific bond amount, but a prior version of Rule 62 directed that a bond amount include "the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the court after notice and

hearing and for good cause shown fixes a different amount or orders security other than the bond." *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979). "Generally, 'the amount of the bond should be sufficient to pay the judgment *plus* interest, costs and any other relief (e.g. attorney fees) the appellate court may award.'" *Cotton*, 860 F. Supp. 2d at 1027-28 (quoting Christopher A. Goelz & Meredith J. Watts, *California Practice Guide: Ninth Circuit Civil Appellate Practice* ¶ 1:168 (TRG 2011)). If a party seeks to deviate from this standard, it should have the burden to "objectively demonstrate" why that would be appropriate. *Cotton*, 860 F. Supp. 2d at 1028 (quoting *Poplar*, 600 F.2d at 1191).

In evaluating a motion to stay enforcement without a bond, courts in the Ninth Circuit have generally applied the factors elucidated in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988). *Neo4j, Inc.*, No. 5:18-cv-07182-EJD, 2024 U.S. Dist. LEXIS 223628, at *3. These factors include:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon*, 866 F.2d at 904-05 (internal quotation marks and citations omitted). As the third and fourth factors apply to opposite circumstances as the fifth factor, a party need not—and indeed cannot— meet all the factors to merit a stay. *See Clark v. Hidden Valley Lake Ass'n*, No. 16-CV-02009-SI, 2018 WL 2412136, at *3 (N.D. Cal. May 29, 2018) (holding that defendant could not argue both that a bond would create a financial hardship and that the court should be confident in its ability to pay the judgment).

**DISCUSSION**

Defendant relies on the fifth *Dillon* factor to support his motion to stay without a bond, arguing that he "will likely be forced into personal bankruptcy if required to post a full bond in order to stay enforcement of this action." Mot. at 6. In turn, the bankruptcy process "would place his multiple creditors in an extremely insecure position." *Id.* at 7. Defendant further argues waiver is

more appropriate where, as here, the Court acknowledged the open legal question upon which defendant is presumably appealing. *Id.* Defendant contends that an unbonded stay would support the status quo more than a bond requirement. *Id.* In the alternative, defendant requests that the Court allow him to place some of his Teleport stock in escrow as security. *Id.* at 7-9.

In opposition, plaintiffs argue the first two factors weigh in favor of a bond because defendant has "demonstrated a willingness to flee the jurisdiction of the U.S. court system to Poland," Opp'n at 6, and because defendant's asserted lack of assets "suggest[s] the collection process may be arduous." *Id.* (quoting *Angioscore, Inc. v. Trireme Med., Inc.*, No. 12-cv-03393-YGR, 2015 U.S. Dist. LEXIS 144465, at *6 (N.D. Cal. Oct. 23, 2015)). Plaintiffs' retained collections counsel states that his research to date "has not shown other collectible assets."[2] Dkt. No. 103-3 ("Decl. Selik") ¶ 13.[3] Since defendant reports substantial debts and no significant assets beyond the Teleport stock, plaintiffs argue the third and fourth factors weigh in favor of a bond as well. *Id.* at 7-9. Finally, plaintiffs briefly discuss the fifth factor, contending that defendant "provides no explanation of how requiring a supersede[a]s bond would affect the unnamed creditors identified in his declaration, if at all." Opp'n at 9.

The third and fourth factors are not at issue here, since plaintiff could not seek waiver under these factors while simultaneously seeking a waiver under the fifth factor. *See Clark*, No. 16-CV-02009-SI, 2018 WL 2412136, at *3. Nor is there any suggestion that defendant's financial position is so solid that eventual payment of the award is not a concern. The Court therefore focuses its analysis on the first, second, and fifth *Dillon* factors.

The evidence regarding the existence or location of any assets in defendant's possession is contested. Given the lengthy and very litigious history between the parties, the Court finds plaintiffs' concern about asset positioning outside of the United States to be reasonable and not inadmissible speculation. Defendant now declares he has "no plans to 'flee the jurisdiction' and

---

[2] The declaration does not make clear what "other" means in this context.

[3] Defendant raises numerous evidentiary challenges to other paragraphs of Mr. Selik's Declaration. Reply at 14-15. This order does not rely on those portions of the declaration and considers these challenges moot.

1  [has] never done so." Decl. Sywula ISO Reply ¶ 4.  However, the Court notes that very early in this
2  litigation, when plaintiffs were trying to serve defendant at his United States address, defendant
3  submitted a sworn declaration from Poland.  Dkt. No. 25-1 at 24.  The Court then ordered
4  defendant's counsel to provide an address for service if he could not accept service on his client's
5  behalf, but service failed at the provided Polish location.  *See* Dkt. No. 43-1 ¶¶ 10-13.

6  Regardless, taking defendant at his word regarding his precarious financial position, it seems
7  clear that any collections "may be arduous."  *See Angioscore*, No. 12-cv-03393-YGR, 2015 U.S.
8  Dist. LEXIS 144465, at *6.  The question becomes whether the fifth *Dillon* factor merits a stay
9  under these circumstances anyway.  In line with this factor, "[c]ourts have waived or allowed for
10 reduced supersedeas bonds where the defendant has shown that she cannot post the full bond, and
11 enforcement of the judgment would leave her insolvent."  *Fed. Trade Comm'n v. Com. Planet*, Inc.,
12 No. 809CV01324CJCRNBX, 2012 WL 13015007, at *8 (C.D. Cal. Sept. 13, 2012) (collecting
13 cases).

14 The fifth *Dillon* factor was drawn from the Seventh Circuit's prior decision in *Olympia*
15 *Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794, 799 (7th Cir. 1986), where
16 the court held alternative security sufficient in place of a bond.  There, the plaintiff had secured an
17 antitrust judgment of $36 million, but the judge allowed alternative security "consisting of a pledge
18 of $10 million in cash, $10 million in accounts receivables, and a security interest, which [the
19 judgment debtor] represented to be worth about $70 million, in some of the company's physical
20 assets."  *Olympia*, 786 F.2d at 795-96.  The appellate court concluded the district court acted
21 reasonably to help the judgment debtor avoid bankruptcy and the effect it would have on other
22 creditors.  *Id.* at 799.

23 Other courts have foregone a bond for alternative measures of security.  In *Commerce*
24 *Planet*, the judgment debtor provided a declaration, as defendant here did, stating execution of the
25 full judgment would force him into bankruptcy.  No. 809CV01324CJCRNBX, 2012 WL 13015007,
26 at *9.  The court was therefore willing to consider a reduced bond, but rejected the judgment debtor's
27 initial offer and directed the judgment creditor to provide a proposal after it reviewed the judgment
28 debtor's financial disclosure.  *Id.*  Similarly, in *Owlink Technology, Inc. v. Cypress Technology Co.,*

*Ltd.*, the Court approved a $15 million bond that amounted to 57% of the judgment due to concerns about the judgment debtor's financial viability. No. 8:21-cv-00717-SPG-KES, 2024 U.S. Dist. LEXIS 240143, at *4-9 (C.D. Cal. Feb. 16, 2024). In other cases, courts have placed some other limitation on the judgment debtor, like an order prohibiting the judgment debtor from disposing of any assets. *See*, *e.g.*, *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 874 (10th Cir. 1986).

In *Neo4j, Inc.*, the court ruled against a judgment debtor's claim for relief under fifth factor because the debtor did not furnish "any specific information to support this argument." No. 5:18-cv-07182-EJD, 2024 U.S. Dist. LEXIS 223628, at *6. The debtor stated in a declaration that "it is highly likely that I will be forced into bankruptcy if the garnishment proceeds" but did not identify creditors or describe his current assets. *Id.* Defendant here makes a similar statement in his declaration, but does provide some of the detail lacking in *Neo4j, Inc.* Specifically, defendant has listed his debts (although, other than the IRS, not his specific creditors), monthly household income, and monthly household expenses.

Nonetheless, under the circumstances of this case, the Court holds that a bond is necessary to secure plaintiffs' interest in the judgment. Defendant has not "objectively demonstrate[d]" why such a sharp deviation from the standard bond would be appropriate here. *See Cotton*, 860 F. Supp. 2d at 1028 (quoting *Poplar*, 600 F.2d at 1191). Defendant's only evidence is his own declaration, which—as plaintiffs point out—uses recycled figures and is drawn into question by his own 2022 deposition testimony. Defendant does not provide any financial statements to support his assertions or identify any specific third-party creditors beyond the IRS. Nor does he state his current employment status. Moreover, the history of litigation between these parties suggests that collection may be difficult should defendant's appeal take time to be resolved.

Defendant's suggestion that the open legal question underlying appeal merits a stay of enforcement carries some weight, but not enough to reverse the Court's conclusion that a bond is necessary. Even if this Court were to be found lacking in jurisdiction, defendant cannot show that he is likely to fare better in state court. Indeed, a state court has added to the judgment by confirming the arbitrator's award of $500,000 in attorney's fees that this Court declined to award due to jurisdictional questions. *See* Dkt. No. 103-1, Ex. 1.

7

Lastly, the Court rejects defendant's alternative request to post a certain amount of his Teleport shares as security. Teleport is a start-up company and, despite the company's marketing materials for investors, plaintiffs are correct to label the stock value as "indeterminate." Opp'n at 4. This is not a case like *United States v. Birdsong*, where the judgment debtor owned real property with obvious value as an alternative security. No. CV 17-72-M-DWM, 2019 U.S. Dist. LEXIS 34082, at *4, 123 A.F.T.R.2d (RIA) 2019-971 (D. Mont. Mar. 4, 2019). Defendant's stock will only attain true value should the plaintiffs succeed in their entrepreneurial endeavors, a goal made more challenging by defendant's actions and litigation. As such, the Court will not accept Teleport shares as alternative security.

While the Court requires defendant to post a bond to stay enforcement, the Court will not require a bond that covers the full amount of the judgment. In line with other cases that have allowed lesser but still significant bonds in circumstances of financial instability and third-party creditors, the Court will accept a bond of $750,000 to stay enforcement of its judgment pending appeal.[4]

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion and orders defendant to post a bond of $750,000 should he wish to stay enforcement of the Court's $1,500,000 judgment. Defendant's separate application for a stay of judgment pending this ruling is DENIED as moot.

**IT IS SO ORDERED**.

Dated: June 24, 2025

_____
SUSAN ILLSTON
United States District Judge

---

[4] The Court recognizes, of course, that Rule 62 does not limit the Court of Appeals from issuing a stay in the absence of a district court stay. *See* Fed. R. Civ. P. 62(g).

8